## Case No. 7,058.

### The IONE v. DAVIS.

[N. Y. Times, Oct. 3, 1855.]

Circuit Court, S. D. New York. Oct. 7, 1853.

Stoughton & Dodgè, for libelant.
Mr. Laban, for appellant.

NELSON, Circuit Justice. The libel was filed in this case to recover the value of a parcel of goods shipped by the firm of Medad Platt & Co., in the schooner Ione to Newbern, N. C., consigned to J. M. Gooding, charging the non-delivery of the goods by the master. The bill of lading bears date the 7th October, 1850. The goods were shipped under the following arrangement: They were ordered by W. G. Blaney of Newbern, and on the 28th of September, Medad Platt & Co. answered by saying that the goods would be shipped on the Ione, and that particulars of the time of sailing would be sent to him. On the 10th of October the firm again wrote to Blaney, enclosing the invoice of the goods, but advising him that they were obliged to use much caution in their affairs, as they had been great sufferers in business transactions at Newbern; that for this reason they had sent invoice and bill of lading to the mutual friend of both parties, J. M. Gooding, with whom they had no

doubt he would be able to make satisfactory arrangements. On the same day the firm wrote to Gooding, enclosing an invoice to him, saying that he had been referred to by Blaney, and leaving it discretionary with him to deliver the goods to Blaney, and be responsible for them himself, or, if not, then to dispose of them for account of the firm. The goods were consigned in the bill of lading to Gooding. On the arrival of the Ione at Newbern on the 16th October, the goods were delivered by the master to Blaney, and were placed in his store, which adjoined Gooding's, where he proceeded to sell them in the usual way of retail stores. Gooding had lent money and his credit to Blaney to assist him in commencing business. Blaney failed, and quit business in January, 1851, and Gooding bought his stock of goods, and took possession of them.

The ground upon which it is sought to charge the vessel is that the goods were delivered to Blaney by the master without privity or authority of Gooding, the consignee. This point is strongly contested upon the evidence, which is very voluminous—a great portion of it taken, however, upon a question that is not left in doubt upon the facts, namely, whether or not Gooding was absent from Newbern on the 16th October, when the vessel arrived. The proofs show that he was not; and the result of this inquiry tends strongly to the conclusion that the position assumed by him, that he did not give authority to Blaney to receive the goods, is a pretext to escape responsibility, and charge it upon the vessel. He admits that when in Newbern he was in the habit of seeing Blaney daily, as his place of business was in the next building. In addition to this, he advised him to go into the business, and lent him money and his credit for the purpose. He had a strong interest, therefore, pecuniarily, as well as from friendship, to look into the state and condition of the business, and must have had knowledge of the arrival of the goods and possession of them by Blaney. Indeed, he admits this; but, under the pretext of absence from Newbern at the time of the arrival of the vessel, he seeks to establish that it was some time afterwards when he first received the information. In this he was clearly mistaken. Besides this contradiction, his whole testimony is loose, evasive, and unreliable. It is impossible to read it without distrust of the facts stated by him. The testimony of Blaney and his wife, proving the authority, is but strengthened by the evasive and unsatisfactory character of the testimony of Gooding. If Blaney received the goods from the master by the authority of Gooding, then, in judgment of law, they were received by the latter agreeably to the bill of lading, and he is responsible for them to the libelants. The decree of the court below is reversed, and the libel dismissed, with costs.